508 A.2d 383

Donald Hudson, Executor of the Estate of Helen Feeley, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 12, 1985, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*Frank J. Skokoski,* for petitioner.

*Roger T. Margolis,* Assistant Counsel, with him, *John Kane,* Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, April 25, 1986:

Donald Hudson, Executor of the Estate of Helen Feeley, filed a petition for review with this Court upon the adverse determination of the Department of Public Welfare (DPW) regarding the application filed by Donald Hudson on behalf of Miss Feeley prior to her death for medical assistance for her nursing home care and the denial of DPW's Executive Deputy Secretary of Hudson's request for reconsideration.

The date of the original application for medical assistance does not appear in the record. The Luzerne County Assistance Office (CAO) issued a notice to ap-

plicant dated December 9, 1983 notifying Miss Feeley that her application had been denied pursuant to 55 Pa. Code §177.83(b)(2)(v) which provides that persons having assets with a combined value in excess of $1500 shall be ineligible for medical assistance. The notice advised the applicant that the CAO had learned of the existence of financial resources totalling $66,919.85 available to Miss Feeley and that, therefore, the CAO had determined that she was ineligible to receive medical assistance.

Petitioner requested a hearing which request was forwarded to DPW's Office of Hearings and Appeals. A fair hearing as prescribed under DPW regulations, 55 Pa. Code §§275.1-275.4, was held before Hearing Officer Kaufman on March 2, 1984.[1] The record does not contain a transcript of those proceedings. The hearing officer made only two findings: that the CAO had determined Miss Feeley ineligible for medical assistance because she had assets in excess of $1500 which determination she had appealed, and that Miss Feeley's assets amounted to $66,920 and were held in trust. In his discussion, the hearing officer recited the respective positions of the applicant, as set forth by Petitioner, and of the CAO with regard to the trust assets and their availability to Miss Feeley to pay for her nursing home care. The hearing officer then stated that, because he found the matter complicated, he would frame an order to implement the legal advice received from DPW's Office of Legal Counsel (OLC) on the matter. The order sustained the appeal in part and denied the appeal in part, contingent upon the resolution of certain factual questions, thus illustrating the hearing officer's continuing confusion.

---

[1] Petitioner, in his brief, indicates that Miss Feeley died on January 25, 1984.

The hearing officer's confusion is understandable. The facts as we have been able to discern them from a less-than-complete record plus the contents of certain documents, attached to the briefs but not, as far as we know, part of the record, present a rather confusing picture. Only one of four important documents is included in the record. That document, entitled an "Agreement," records a conveyance in trust from Helen Feeley to Donald Hudson, Robert Feeley and Eileen Feeley, "successor trustees of the Andrew J. and Minnie E. Feeley Trust." Miss Feeley conveyed a one-fifth share, approximately $33,000, of the proceeds from the sale of the trust real estate of the Andrew J. and Minnie E. Feeley Trust. The agreement provided that Helen Feeley was to receive life interest in the interest income arising from the trust principal and that, upon her death, the trustees were to distribute the principal and any accumulated but unpaid income in accordance with the terms of the Andrew J. and Minnie E. Feeley Trust, *i.e.* one-half in equal shares to Robert Feeley and Betty Ann Feeley and one-half to Donald Hudson.

Three additional documents, purporting to be the Andrew J. and Minnie E. Feeley Trust, a Declaration of Intention comprised of numbered paragraphs explaining the intent of Andrew J. and Minnie E. Feeley with regard to certain of the trust provisions, and a deed from James E. Feeley conveying certain property in trust to Minnie E. Feeley, John P. Feeley and Marie E. Feeley, important to the resolution of the issues in this case, were included by Petitioner in his reproduced record but are not part of the original record certified to this Court. Thus, the information which follows regarding the content of those documents is presented for the sole purpose of aiding the reader in interpreting the adjudications of the hearing officer, the Office of Hearings and Appeals, and DPW's Executive Deputy Secre-

tary in this case, to be outlined in the ensuing paragraphs.

The document purporting to be the Andrew J. and Minnie E. Feeley Trust indicates that in 1935 Andrew J. Feeley and Minnie E. Feeley, husband and wife, conveyed to Minnie E. Feeley, John P. Feeley and Marie E. Feeley certain property (the Feeley Theatre Building) in Hazleton, Luzerne County, Pennsylvania in trust upon certain terms and conditions. Net income from the property was to be paid to Andrew Feeley for life and, upon his death, to his wife. Upon the deaths of Andrew J. Feeley and Minnie E. Feeley, their sons, John P. Feeley and James Feeley, were each to receive one-fifth of the fee simple title to the property, as was their daughter, Marie E. Feeley. Two other daughters, Helen Feeley and Ethel Clark, were each to receive life interest in the net income from one-fifth of the corpus of the real estate. Paragraph (c) of the Trust document gave the trustees the power to impair by mortgage or judgment the entire corpus of the trust to the extent of $1,000 for the benefit of Helen Feeley or Ethel Clark whenever necessary for reasons of sickness or other emergencies. Paragraph (m) of the Trust document provided that in the event of the sale of the property during the lifetime of Helen Feeley or Ethel Clark, one-fifth of the proceeds should be payable to Helen and one-fifth to Ethel.

The document entitled "Declaration of Intention" provides in paragraph four that the settlors intended by paragraph (m) of the trust document that, if during the lifetime of Ethel Clark and/or Helen Feeley the trustees should determine that all of the purposes to be served by the trust had been served and there was no longer reason for continuing the trust, then the trust real estate should be sold and the proceeds distributed as provided in the trust. The settlors continued, however,

by stating that, should the purpose for the creation of the trust not have been served, the proceeds from the sale of the trust real estate should be impressed with the conditions of the trust. There is no statement regarding the purpose of the trust in either the trust document or the Declaration of Intention.

The deed from James Feeley, Miss Feeley's brother, and his wife, Margaret Feeley, purports to convey James Feeley's one-fifth fee simple interest in the corpus of the trust established by his parents to Minnie E. Feeley, his mother, and John P. Feeley and Marie E. Feeley, his brother and sister, to be held in trust by them. James retained life interest in the net income from his one-fifth share of the trust real estate. At his death, half the net income was to be paid to his wife if she survived him and the other half was to be paid to any of his surviving brothers and sisters. The fee simple title to the real estate was to become vested in the grandchildren of his brothers and sisters.

Since we do not have in the record a transcript of the first hearing held on March 2, 1984, we do not know whether counsel for either party attempted to enter any or all of the above documents. We may infer that Counsel for DPW was at least aware of the existence of the documents from the content of her opinion letter which is part of the record. Counsel for DPW indicates in the opinion letter that Miss Feeley owned an undetermined interest in assets totalling $66,919.85, half of which was her brother James' one-fifth share in the proceeds from the sale of the property held in the trust established by her parents and half of which was her own one-fifth share of the sale proceeds. Counsel was unsure whether Miss Feeley's interest in her brother's share amounted to a fee simple interest or simply a life interest in the net income. Resolution of that question, opined DPW's counsel, depended upon

whether James Feeley's death preceded the sale of the
real estate. With regard to Helen Feeley's own one-fifth
share of the proceeds, DPW's counsel stated that, since
Miss Feeley had transferred her fee simple interest in
that amount more than two years prior to her applica-
tion for medical assistance, that transaction, would not
affect Miss Feeley's eligibility.[2] Counsel went on to
point out that, under the terms of the trust established
by Miss Feeley's parents, the trustees were *permitted*
to invade the trust to the extent of $1,000 to pay for
Miss Feeley's health care. Counsel then indicated the
existence of a letter dated January 26, 1983 from "the
owners of the trust" which authorized the bank holding
the assets to invade the trust for Miss Feeley's benefit.
Counsel, thus, did not distinguish between the two
trusts: Miss Feeley's parents' trust, the terms of which if
proven provided for termination of the trust upon sale of
the trust property and distribution of the sale proceeds,
and the trust established by Miss Feeley herself, part of
the record, in which she conveyed in trust her share of
the proceeds to the successor trustees of her parents'
trust.

The hearing examiner thus framed his order as
follows:

It is hereby ORDERED and DECREED
that the appeal of the appellant is denied in part
— that the 1/5 interest received from James
Feeley (approximately $33,000) be considered
her resource if the property were sold prior to

---

[2] Under 55 Pa. Code §177.83(g) which governs disposition of
property as it affects eligibility for medical assistance provides:

(2) A person who disposes of real or personal property
having a value of $500 or more without fair consideration
within two years immediately preceding the date of appli-
cation for medical assistance will be ineligible to receive
MA if he disposes of such property with the intention of
defrauding the Commonwealth.

James Feeley's death. If the property were sold after the death of James Feeley, only the income available from the 1/5 interest, if any is still available, shall be considered as a resource to appellant (part of appellant's life estate).

Appellant's appeal is sustained in part — that the 1/5 interest from the Trust itself (approximately $33,000) is not a resource to appellant, although income from this 1/5 interest, if any is still available, shall be considered as a resource to appellant (also part of appellant's life estate).

Appellant's appeal is also sustained in that the trustees need not invade the principal of the trust to meet appellant's medical expenses.

DPW's Office of Hearings and Appeals, upon receipt of the hearing officer's order, amended the order and denied the appeal in toto. The order included the following statement:

The appellant is part owner of money held in trust. The income earned by the trust has been made available for the appellant's needs in the nursing home and the principal of the trust has also been utilized for her care under an agreement signed by the three co-trustees and the Northeastern Bank of Pennsylvania on April 13, 1981. There is no restriction in that agreement as to the amount or frequency of the withdrawals from principal of the trust. Accordingly, this principal is a resource that the appellant can use through the agreement of the co-trustees.

Again, there is reference to an agreement between the trustees under the trust established by Miss Feeley and the financial institution, wherein the trust principal was deposited, that the trust principal could be invaded for Miss Feeley's benefit. That agreement is not a matter of record.

Petitioner wrote to DPW protesting the above determination which letter DPW interpreted as a request for reconsideration. DPW's Executive Deputy Secretary remanded the matter with a list of four questions to be answered. Specifically, DPW requested to know: (1) the date of James Feeley's death, (2) the date of the sale of the Feeley Theatre Building, the real estate conveyed in trust by Andrew J. and Minnie E. Feeley, (3) whether Helen Feeley was mentally competent to execute the agreement transferring her one-fifth share of the sale proceeds, and (4) the date of the above agreement. A second hearing before Hearing Officer Kaufman was set for July 30, 1984 and a transcript of those proceedings is included in the record. After that hearing, the following order dated August 3, 1984 was issued:

It is hereby ORDERED and DECREED that the appeal of the appellant is sustained as follows:

1) Since the properly [sic] was sold after the death of James Feeley, only the income available from the 1/5 interest, if any is still available, shall be considered as a resource to appellant (part of appellant's life estate).

2) The 1/5 interest from the trust itself (approximately $33,000) is not a resource to appellant, although income from this 1/5 interest, if any is still available, shall be considered as a resource to appellant (also part of appellant's life estate).

3) The trustees need not invade the principal of the trust to meet appellant's medical expenses.

DPW's Office of Hearings and Appeals again issued an order of reversal on August 15, 1984 in which DPW stated that, as long as there was an existing agreement signed by the three successor co-trustees providing for

the co-trustees to withdraw principal at any time upon written request, Helen Feeley had access to assets in excess of $1500 and was, therefore, ineligible for medical assistance.

The order advised that either party to the proceeding could, within fifteen days from the date of the decision, direct a request for reconsideration to the Executive Deputy Secretary of DPW. The parties were also advised they could appeal the order which appeal must be filed with this Court within thirty days of the date of the order. Petitioner requested reconsideration by letter received by DPW on August 28, 1984. DPW denied the request on November 8, 1984. Petitioner then filed his petition for review with this Court on December 5, 1984.

Because Petitioner failed to file a timely appeal from the Board's original order pursuant to Pa. R.A.P. 1512(a) and also failed to obtain reconsideration of the Office of Hearing and Appeals' decision, the only matter which we may properly consider at this time is whether DPW erred in denying Petitioner's request for reconsideration. *Southwest Pennsylvania Natural Resources, Inc. v. Department of Environmental Resources,* 77 Pa. Commonwealth Ct. 114, 465 A.2d 108 (1983). The decision to grant or deny a request for reconsideration is a matter of administrative discretion and, therefore, will be reversed only for an abuse of discretion. *Muehleisen v. State Civil Service Commission,* 66 Pa. Commonwealth Ct. 95, 443 A.2d 867 (1982) *aff'd,* 501 Pa. 335, 461 A.2d 615 (1983).

Given the state of the record, the contradictory reasoning of the various adjudications and orders issued from DPW, and the apparent failure of DPW to satisfactorily resolve the issues raised in this case, we must conclude that DPW indeed abused its discretion in denying reconsideration.

Let us assume for purposes of discussion that the facts in this case include the assertions of Petitioner as contained in the documents included in Petitioner's reproduced record although not part of the original record. James Feeley's trust deed permits Helen Feeley only life interest in the interest income from his one-fifth share of the theatre proceeds. Thus, only half the principal, or half of $66,919.85, if any, was available to Miss Feeley. That half Miss Feeley transferred more than two years prior to her application for medical assistance, as DPW's counsel admits of record. Under the applicable law, the only way to reach Miss Feeley's share of the sale proceeds, approximately $33,000, is if Miss Feeley herself, as settlor of a trust of which she is a beneficiary, reserved power to direct the disposition of the trust principal, by providing, for example, that the trustee(s) may invade the trust principal for the benefit of settlor as beneficiary. *See Morton v. Morton*, 394 Pa. 402, 147 A.2d 150 (1959), citing as authority Section 156 of the Restatement of Trusts, 2d. That section provides:

Section 156   Where the Settlor is a Beneficiary

(1) Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest.

(2) Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit.

Under the provisions of the trust of which Miss Feeley was both settlor and beneficiary, the trustees were not authorized to invade the trust principal. The trustees were authorized only to pay Miss Feeley during her life the interest income which accrued. The alleged agree-

ment between the trustees and the financial institution which is not a matter of record to which DPW refers in its final adjudication may or may not have any impact on the issue of whether Miss Feeley has access to assets in excess of $1500. In any event, it is doubtful that Miss Feeley had access to the entire $66,919.85, the conclusion reached by DPW.

DPW's reliance upon facts allegedly established by documents not part of the record to support its final determination to deny Miss Feeley medical assistance necessitates our remand of this case to DPW for further hearing and the admission of any and all admissible testimony and/or documents pertinent to the resolution of the issues raised herein and for DPW's thorough reconsideration of its decision in this case.

Accordingly, we issue the following order.

## ORDER

AND NOW, this 25th day of April, 1986, the order of the Department of Public Welfare in the above-captioned matter is vacated and the matter is remanded to the Department of Public Welfare for proceedings consistent with this opinion. Jurisdiction relinquished.